United States District Court
Southern District of Texas

**ENTERED**

August 11, 2020

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

No. 3:20-cr-00019

THE UNITED STATES OF AMERICA

v.

ANDREW JOEL GALVAN

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

On June 24, 2020, federal agents executed a search warrant at Andrew Galvan

parents' residence for evidence of child exploitation and child pornography. That same

day, Galvan was arrested and charged in state court with three counts of possession of

child pornography.[1] Galvan was released from state custody the following day after

posting a $75,000 surety bond.[2]

On June 25, the United States filed a federal criminal complaint charging

Galvan with receipt and possession of child pornography.[3] On July 9, after this court

issued a temporary-detention order, Galvan voluntarily surrendered himself to

federal authorities.[4] The following day, United States Magistrate Judge Dena Palermo

---

[1]     The state criminal charges stem from the same criminal conduct at issue in the underlying federal case. *See* Dkt. 15 at 1. Page-number citations to documents that the parties have filed refer to those that the court's electronic-case-filing system automatically assigns.

[2]     *See* Dkt. 15 at 1.

[3]     Dkt. 1.

[4]     *See* Dkt. 4.

conducted a pretrial-detention hearing.[5] Judge Palermo ordered Galvan detained

pretrial and summarized her findings as follows:

> [T]he Government [has] established by clear and convincing evidence
> that [Galvan] is dangerous because he solicited pornographic photos and
> videos from at least ten prepubescent minors and threatened to expose
> at least three of them if they did not continue to comply with his demands
> for more. In less than a two-month period, while at home during the
> [coronavirus] pandemic, [Galvan] generated more than 8,000 pages of
> Instagram data related to his activity alone. . . . [Galvan] has not rebutted
> the presumption that he is a danger to the community. His parent's
> commitment to supervise him does not provide the Court with any
> comfort since these acts were committed while [Galvan] was at home
> with his parents. . . . Thus, the Court finds that [Galvan] is a danger to
> the community such that it cannot safely release him on bond.[6]

On July 26, a federal grand jury returned a five-count indictment against

Galvan, charging him with (Counts 1 and 2) the sexual exploitation of two minor

victims, 18 U.S.C. § 2251(a) and (e); (Count 3), receipt of child pornography, 18 U.S.C.

§ 2252A(a)(2)(B) and (b)(1); (Count 4) possession of child pornography, 18 U.S.C. §

2252A(a)(5)(B) and (b)(2); and (Count 5) transfer of obscene material to a minor, 18

U.S.C. § 1470.[7]

Before the court is Galvan's motion to revoke the court's order of detention

pending trial.[8] Alternatively, Galvan seeks temporary release pursuant to the Bail

Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, based on the "significant mental

---

[5]       *See* Dkt. 5.

[6]       *Id.* at 4.

[7]       Dkt. 11.

[8]       Dkt. 15.

evaluation and treatment" necessary to effectively prepare his defense, which he contends is "exponentially" more difficult "due to the current COVID-19 pandemic."[9]

## I.    LEGAL STANDARD

Under the Bail Reform Act, courts must release a person charged with a federal criminal offense pending trial unless, "after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person or the community."[10] "[T]he lack of reasonable assurance of either the defendant's appearance or the safety of others or the community is sufficient; both are not required."[11]

### A. 18 U.S.C. § 3145(b)

"If a person is ordered detained by a magistrate judge . . ., the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."[12] In reviewing a magistrate judge's decision regarding detention or conditions of release, the district court acts *de novo* and makes an independent determination for detention or the appropriate conditions of pretrial release.[13] Doing so does not require an additional evidentiary hearing; the district

---

9      *See id.* at 4–5.

10     18 U.S.C. § 3142(e)(1).

11     *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985).

12     18 U.S.C. § 3145(b).

13     *United States v. Rueben*, 974 F.2d 580, 586–87 (5th Cir. 1992) (citing *Fortna*, 769 F.2d at 249).

court may base its decision on the original detention hearing and any additional evidence proffered by counsel.[14]

### B. 18 U.S.C. § 3142(i)

The court may temporarily release a detained defendant to the custody of an "appropriate person, to the extent that [the court] determines such release to be necessary for the preparation of the person's defense or for another compelling reason."[15] A defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i), and the underlying facts surrounding the defendant's detention are relevant to this analysis.[16]

## II.   DISCUSSION

Galvan's motion combines two different arguments for pretrial release: (1) he appeals Judge Palermo's pretrial-detention order under 18 U.S.C. § 3145(b); and (2) he argues pretrial release is "necessary for the preparation of [his] defense" under 18 U.S.C. § 3142(i).

Although these are two separate and distinct arguments, in this instance, the court's independent determination regarding Galvan's pretrial detention is dispositive. As explained below, the court reaches the same decision as Judge Palermo and finds Galvan has failed to rebut 18 U.S.C. § 3142(e)'s presumption that no

---

[14]   *See United States v. Anderson*, No. 3:14-CR-210-D(08), 2014 WL 2764747, at *1 n. 2 (N.D. Tex. June 18, 2014) ("The court's review of the record developed before the magistrate judge is an appropriate procedure to comply with [its] obligation" to make an independent determination); *United States v. Baker*, 703 F. Supp. 34, 36 (N.D. Tex. 1989) ("Independent review . . . does not mean a *de novo* hearing.").

[15]   18 U.S.C. § 3142(i).

[16]   *See United States v. Buswell*, 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases).

condition or combination of conditions will reasonably assure the safety of the community, and that, even if he were to rebut this presumption, the government has proved by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of the community. Still, out of an abundance of caution, the court will also address whether pretrial release under § 3142(i) is necessary for the preparation of Galvan's defense.

## A. *De Novo* Determination for Pretrial Detention

Because Galvan is charged with an offense involving a minor under 18 U.S.C. §§ 2251 and 2252A(a)(2), there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure [his] appearance . . . or the safety of any other person or the community."[17] Where the presumption of detention attaches, the "defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight."[18]

### 1. Galvan's Arguments in Support of Revoking the Court's Pretrial-Detention Order

Notwithstanding his limited burden of production, at the pretrial-detention hearing, Judge Palermo found that Galvan did not present sufficient evidence to overcome § 3142(e)'s presumption.[19] Galvan contends this was in error, directing the court's attention to his "lack of criminal history, no history of drug or alcohol abuse,

---

[17]     *See* 18 U.S.C. § 3142(e)(3)(E); *United States v. Slaughter*, 3:18-CR-00027, --- F. Supp. 3d. ---, 2020 WL 1685117, at *3 (S.D. Tex. Apr. 6, 2020).

[18]     *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

[19]     Dkt. 5.

employment, and strong family ties to the Southern District of Texas."[20] He further

argues his longstanding ties to the community rebuts § 3142(e)'s presumption,

quoting the Fifth Circuit's opinion in *United States v. Jackson*, in which the court

held: "[W]here the defendant has presented considerable evidence of his longstanding

ties to the locality in which he faces trial . . . the presumption contained in § 3142(e)

has been rebutted."[21] Finally, Galvan insists that any potential danger he poses to the

community "could be rebutted by requiring certain conditions of release including:

the surrender of firearms, internet monitoring, and electronic monitoring."[22]

After concluding he carried his limited burden of production, Galvan attacks

Judge Palermo's finding that the government proved by clear and convincing evidence

that no condition or combination of conditions of release will reasonably assure the

safety of any other person or the community.[23] On this point, Galvan argues Judge

Palermo effectively lowered the government's burden by requiring it to show that no

condition or combination of conditions will "guarantee" the safety of any other person

or the community.[24] In support, Galvan argues[25] his "crime was limited to online

---

[20]    Dkt. 15 at 5.

[21]    845 F.2d 1262, 1266 (5th Cir. 1988).

[22]    Dkt. 15 at 5.

[23]    *See id.*

[24]    *See id.* at 5–6.

[25]    Galvan also claims: "The pretrial report generated by the United States Probation department recommended release with conditions." Dkt. 15 at 5. However, the court is unable to verify the veracity of this claim as the "pretrial report" is not part of the record. But even if it were, the court is still convinced that no condition or combination of conditions of release can reasonably assure the safety of any other person or the community.

communications only," highlighting that the government's own witness testified there was no evidence Galvan "ever attempted or sought to meet a minor."[26]

### 2. The Evidence Presented at the Pretrial-Detention Hearing

At the July 10 pretrial-detention hearing, Special Agent for Homeland Security Investigations ("HSI") Dwayne Lewis testified HSI's investigation into Galvan began in April 2020, when a mother in New York reported that she observed sexually explicit messages between her 8-year-old child and an individual posing as a 13-year-old boy on Instagram.[27] HSI agents in New York reviewed the conversations on the minor victim's cellphone and confirmed that a user, operating under the alias Chris Perez, had instructed the minor to send him nude photographs and videos of the minor.[28] The male user also sent photographs of his penis or "images of an erect penis from some unknown [Reddit] account" to the minor victim, claiming the images were of himself.[29] HSI obtained records from Instagram, as well as telephone and internet-service providers, indicating the male user resided at Galvan's parents' residence in Pearland, Texas.[30]

HSI obtained a search warrant for the male user's Instagram account.[31] The search returned over 8,000 pages of Instagram conversations during the approximate

---

[26]    *See* Dkt. 15 at 6.

[27]    Dkt. 8 at 12, 14 (12:3–12:21, 14:1–14:5).

[28]    *Id.* at 12–13 (12:22–13:22).

[29]    *Id.* at 19 (19:8–19:21).

[30]    *Id.* at 14-16 (14:14–16:11).

[31]    *Id.* at 14 (14:6–14:8).

month-and-a-half period the Instagram account was active between March and April 2020.[32]

Special Agent Lewis' review of the Instagram conversations revealed sexually explicit conversations between the male user and at least ten separate minor victims. He described the male user's pattern of conduct as follows. First, the male user would develop a relationship with a minor by posing as a 13-, 14-, or 15-year-old boy. After developing a rapport, the male user would then direct and instruct the minor on how to pose, photograph, or record his or her sexual organs. He would then suggest different online applications (*e.g.,* Snapchat) or methods of communication (*e.g.,* text message) for the minor to send the male user photographs or videos that the minor created at his direction.[33] If a minor indicated that he or she did not want to continue sending photographs or videos, the male user responded by threatening to send nude photographs of the minor that he already received to his (Galvan's) friends or members of the minor's family.[34] In one particularly egregious example, Special Agent Lewis described a victim crying as she pleaded with the male user because she did not want to comply with his demands.[35]

On June 24, HSI searched Galvan's residence and discovered multiple hard drives and a thumb drive containing child pornography.[36] Special Agent Lewis

---

[32]     *Id.* at 23 (23:15–23:24).

[33]     *Id.* at 29–31 (29:1–31:19).

[34]     *Id.* at 29 (29:15–29:24).

[35]     *Id.* at 29–30 (29:25–30:11).

[36]     *See id.* at 21 (21:12–21:24); *see also* Dkt. 11 at 4 (stating agents seized two 500 Gb solid-state hard drives and an Apple MacBook Pro with an internal hard drive from Galvan's residence).

testified forensic examiners discovered approximately 200 images and videos of child pornography when executing the search warrant.[37] Notably, at the time of the pretrial-detention hearing, forensic examiners had yet to complete their examination of Galvan's electronic storage devices.[38] When asked to describe some of the child pornography, Special Agent Lewis referenced three videos involving prepubescent victims, two of which depicted sexually violent acts against young children, one of whom was a toddler.[39]

Special Agent Lewis also recounted his non-custodial interview with Galvan, which took place after HSI completed its search of the residence. After being read his *Miranda*[40] rights, Galvan admitted to operating the Instagram account in question.[41] He also confessed to sending pictures of his penis to minors.[42] Galvan estimated he began engaging in this behavior—approaching minors over social media—in late-December 2019.[43] But his "fascination" with child pornography dates back to when he was exposed to child pornography at the age of 12 or 13 years old.[44]

## 3. Analysis

In an effort to surmount § 3142(e)'s rebuttable presumption, defendants, such as Galvan, often cite the following language from the Fifth Circuit's opinion in

---

[37]    *Id.* at 21 (21:12–21:24).

[38]    *See id.* at 23 (23:11–23:14).

[39]    *Id.* at 22 (22:8–22:25).

[40]    *Miranda v. Arizona*, 384 U.S. 436 (1966).

[41]    Dkt. 8 at 18 (18:6–18:22).

[42]    *Id.* at 19 (19:13–19:14).

[43]    *Id.* at 19–20 (19:22–20:1).

[44]    *Id.* at 20 (20:2–20:13).

*Jackson*: "[W]here the defendant has presented considerable evidence of his longstanding ties to the locality in which he faces trial . . . the presumption contained in § 3142(e) has been rebutted."[45] But as this court recently observed, "*Jackson* only presents a fragment of the law."[46] Shortly after issuing its opinion in *Jackson*, the Fifth Circuit clarified: "[T]hat presumption is not a mere 'bursting bubble' that totally disappears from the judge's consideration after the defendant comes forward with some evidence."[47]

Rather, in addition to 18 U.S.C. § 3142(e)'s rebuttable presumption, courts consider the following statutorily prescribed factors: "(1) The nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the [defendant]; (3) the history and characteristics of the [defendant] . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."[48]

The court addresses each factor in turn, below.

### i.     The Nature and Circumstances of the Offenses Charged

Without question, the offenses with which Galvan is charged are serious in nature and involve circumstances that endanger the community.[49] He is charged not

---

[45]     *Jackson*, 845 F.2d at 1266.

[46]     *See Slaughter*, 2020 WL 1685117, at *3.

[47]     *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989).

[48]     18 U.S.C. § 3142(g)(1)-(4).

[49]     *See, e.g., United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) (observing Congress has made clear its "view that child pornography crimes are serious offenses" (internal brackets and quotation marks omitted)); *United States v. Goff*, 501 F.3d 250, 258–59 (3d Cir. 2007) (ruling that "[c]hildren are exploited, molested, and raped" and thus suffer "injuries and the taking of their innocence" due to the market for child pornography and rejecting defendant's effort "to downplay the nature and seriousness of his crime . . . [by] implying that his was a victimless crime because viewing the pornography was 'a solitary, private activity of short duration driven by [his] curiosity'"); *United States v. Fitzpatrick*, 44 F. App'x 653 (5th Cir. 2002)

only with receipt and possession of child pornography—both of which are considered "crimes of violence" under the Bail Reform Act—but also the sexual exploitation of two minor victims and sending obscene materials to a minor.[50] And although there is no allegation that Galvan engaged in illicit physical contact with a minor, that fact does not preclude detention.[51]

### ii.    The Weight of the Evidence Against Galvan

The evidence against Galvan is substantial and strongly favors pretrial detention.[52] At the July 10 detention hearing, Special Agent Lewis testified Galvan admitted to operating the Instagram account in question.[53] A review of the less-than-two-month-old Instagram account revealed 8,185 pages of conversations, including sexually explicit messages between Galvan and at least ten separate minor victims.[54] Moreover, in addition to presenting evidence that Galvan was in possession of child pornography, the government showed that Galvan extorted at least four of his victims

---

("[P]ossession of child pornography [is] a 'crime of violence' within the meaning of 18 U.S.C. § 3142(f)."); *United States v. Church*, 701 F. Supp. 2d 814, 820–22 (W.D. Va. 2010) (cataloging grievous harms caused by child-pornography offenses); *United States v. Crisman*, CR 11-2281 JB, 2011 WL 5822731, at \*16 (D.N.M. Nov. 15, 2011) (finding that a defendant charged with distribution and possession of child pornography using file-sharing software was charged with a crime of violence, despite the fact that there were "no allegations that [the defendant] engaged in illicit physical contact with a minor, or that he directly solicited a minor"); *see also United States v. Melguizo*, 824 F.2d 370, 371 (5th Cir. 1987) ("We find that a possible sentence of ten years is also sufficient indication that the offense is serious."); 18 U.S.C. § 2252A(b)(1) (providing for imprisonment of up to twenty years for violation of § 2252A(a)(2)(A)); 18 U.S.C. § 3142(g)(1) (identifying the question of "whether the offense is a crime of violence . . . or involves a minor victim" as among important factors in its assessment of the nature and circumstances of the offense).

[50]     18 U.S.C. § 3156(a)(4)(C) (defining "crime of violence" as used in 18 U.S.C. § 3142 as including offenses under 18 U.S.C. § 2252A).

[51]     *See Crisman*, 2011 WL 5822731, at \*16.

[52]     *See* Section II(A)(2), *supra*; *see also United States v. Davin*, 12-10141-EFM, 2012 WL 2359419, at \*3 (D. Kan. June 20, 2012) ("After all, child pornography is nothing more than pictorial evidence of crimes against children.").

[53]     Dkt. 8 at 18 (18:15–18:22).

[54]     *Id.* at 29–31 (29:1–31:19).

into sending him additional photographs or videos by threatening to send the nude photographs or videos that he had already received from the minor to his friends or the minor's family members.[55]

### iii.    History and Characteristics of Galvan

While Galvan does not have a criminal history, he has described himself as a "monster" who admits to being "fascinated" by child pornography since he was 12 or 13 years old.[56] And although there is evidence in the record demonstrating Galvan's ties to the Southern District of Texas (*e.g.,* residence, employment, and family), that evidence has little, if any, bearing on whether there exists a condition or combination of conditions of release that will reasonably assure the safety of another person in the community. Indeed, while Galvan's was not the most sophisticated scheme, it demonstrates his resourcefulness in obtaining child pornography, his ability to deceive and manipulate minor victims, and his iniquitous capacity to control his victims by resorting to threats of extortion.

### iv.    The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by Galvan's Release

Galvan argues his "crime was limited to online communications only," implying he does not pose a danger to the community since he has never "attempted or sought to meet a child."[57] The court categorically rejects Galvan's characterization of his crime as being "limited to online communications only."[58] On at least four occasions, Galvan

---

[55]    *Id.* at 18, 29 (18:13–18:22, 29:11–29:24).

[56]    *See id.* at 20–21 (20:2–21:9).

[57]    Dkt. 15 at 6.

[58]    *See* Section II(A)(2), *supra.*

blackmailed a minor victim into creating and sending him additional pornographic images or videos of themselves after they refused to do so by threatening to share nude images of the minor victim, which he had already received, with either his own friends of the minor's family members. This is clear and convincing evidence that Galvan directly engaged in the production of child pornography, utilizing his perceived anonymity and the unlimited reach of the internet as an entryway into the homes of his minor victims.

Taking a step back and confronting the underlying premise of Galvan's argument, the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children."[59] Indeed, as Congress has observed, "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years."[60] Moreover, possessors of child pornography aid in creating and sustaining a market for such material.[61]

---

[59]     Child Pornography Prevention Act of 1996, Pub.L. No. 104–208, 110 Stat. at 3009–27 (codified at 18 U.S.C. § 2551).

[60]     *Id.*; *see also New York v. Ferber*, 458 U.S. 747, 760 n.10 (1982) (discussing the long-term psychological, emotional, and mental difficulties of children who have been sexually exploited: "[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. . . . It is the fear of exposure and the tension of keeping the act a secret that seem to have the most profound emotional repercussions." (internal citations omitted)).

[61]     *See Berger v. Ryan*, CIV 09-2689-PHX-DGC, 2011 WL 2690436, at *15 (D. Ariz. July 11, 2011), *report and recommendation adopted*, CV-09-2689-PHX-DGC, 2011 WL 3875853 (D. Ariz. Sept. 2, 2011), *aff'd sub nom. Berger v. Horne*, 525 F. App'x 543 (9th Cir. 2013); *see also United States v. Forrest*, 429 F.3d 73, 79 (4th Cir. 2005) ("[P]rohibiting the possession and viewing of child pornography will . . . help[ ] to protect the victims of child pornography and to *eliminate the market* for the exploitative use of children."

In sum, while "not every [child-pornography] case will warrant [pretrial] detention,"[62] attempting to downplay the severity of the charges by arguing that no victims were physically harmed as a result of a defendant's "mere" viewing, possessing, or sharing of child pornography is a non-starter.

### 4. No Condition or Combination of Conditions Will Reasonably Assure the Safety of Any Other Person or the Community

Based on its *de novo* review, the court finds Galvan has failed to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of any other person or the community.[63] But even if he were able to rebut the presumption, the court finds the record establishes by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety any other person or the community.

In reaching its decision, the court has carefully considered whether there are any conditions of release that could reasonably ensure the safety of the community, given the crimes with which Galvan is charged. Galvan suggests: "GPS monitoring with restrictions of where [Galvan] can go and when he can [sic]; no contact with minors, no internet unless approved by pretrial services, and [ ] psychiatric treatment."[64]

---

(emphasis in original) (quoting the Child Pornography Prevention Act of 1996, Pub.L. 104–208, 110 Stat. 3009–27)).

[62]   *See United States v. Reiner*, 468 F. Supp. 2d 393, 398 (E.D.N.Y. 2006).

[63]   *See* 18 U.S.C. § 3142(e)(3)(E).

[64]   Dkt. 15 at 7.

GPS monitoring will not help reasonably assure the safety of the community in this instance. Galvan is accused of committing the charged offenses during the coronavirus pandemic from the comfort of his parents' home, while his victims were confined to their respective homes. Moreover, even if the court were able to restrict his access to the internet—a feat which many courts have noted is a near impossibility given the internet's ubiquitous presence[65]—Galvan's *modus operandi* does not even require the internet, as one can access social media with a smartphone and cell service.[66]

### B. Whether Pretrial Release is Necessary for the Preparation of Galvan's Defense

Motions for temporary release under 18 U.S.C. § 3142(i) have become immensely more common due to the coronavirus pandemic. But nearly every motion argues temporary release is necessary "for another compelling reason"—*i.e.,* the possibility of contracting COVID-19 while in detention—not to aid in "the preparation of the [defendant's] defense."[67]

Courts considering whether pretrial release is necessary to assist in the preparation of the defendant's defense under 18 U.S.C. § 3142(i) have considered "(1) the time and opportunity the defendant has to prepare for the trial and participate in his defense, (2) the complexity of the case and volume of information, and (3) expense

---

[65]     *See, e.g., United States v. Voelker*, 489 F.3d 139, 145 (3d Cir. 2007).

[66]     A user can access social-media applications on a smartphone or tablet using a carrier's network so long as he has access to a cell-phone signal.

[67]     *See* 18 U.S.C. § 3142(i).

and inconvenience associated with preparing while incarcerated."[68] Still, "the facts surrounding the underlying reasons for the defendant's detention are relevant to the [§ 3142(i)] analysis."[69]

The thrust of Galvan's argument is as follows. To effectively defend against these charges, Galvan requires "significant" mental-health evaluation and treatment; in fact, defense counsel contends pretrial mental-health treatment "is typical[ly] one of the most significant factor[s] when determining a sentence" for defendants facing similar charges.[70] Galvan points out that, ordinarily, obtaining mental-health treatment while in detention is cost-prohibitive.[71] But in the age of the coronavirus, it becomes a "logistical nightmare," as most mental-health experts will not conduct in-person meetings at detention facilities. And even if a mental-health expert willing to perform an in-person examination can be located, given the current pandemic, scheduling such an appointment is a near-impossibility.[72]

There is little doubt that pretrial release will always, to some extent, provide a defendant with additional time or opportunity to prepare for trial and participate in his defense, or reduce the expense or inconvenience associated with preparing for trial. But the question is not whether pretrial release will *assist* in the preparation of

---

[68]     *Buswell*, 2013 WL 210899, at *6–7; *United States v. Dupree*, 833 F. Supp. 2d 241, 249 (E.D.N.Y. 2011).

[69]     *Id.* at *5.

[70]     *See* Dkt. 15 at 4.

[71]     *Id.*

[72]     *See id.*

the defendant's defense, but whether it is *necessary* for the preparation of that defense.[73]

Here, the court finds that release is not necessary. Galvan's briefing does not address the availability of virtual or telephonic psychiatric care. And there is nothing in the record to suggest that an in-person psychiatric visit is necessary, or that virtual or telephonic care would be either inaccessible or inadequate. Given how prevalent telemedicine has become in the past few months, the court finds pretrial release is not necessary for the preparation of Galvan's defense in this instance.

Galvan is free to submit additional evidence demonstrating the unavailability of telemedicine at his detention facility or the necessity of an in-person psychiatric evaluation. However, any such submission must include a thoroughly comprehensive release plan from which the court can reasonably assure Galvan's release will not pose a danger to the community, not just citations to articles that generally discuss the "wide-ranging 'social and economic costs'" of pretrial detention.[74]

***

The court sympathizes with Galvan's need for psychiatric treatment, as well as his argument that obtaining such treatment while in detention is a "logistical nightmare" given the current pandemic.[75] But the government is correct—these challenges are not unique to Galvan, but shared by all inmates, and must be weighed

---

[73]     18 U.S.C. § 3142(i) (emphasis added).

[74]     *See, e.g.,* Dkt. 15 at 3.

[75]     *See id.* at 4 (citing the unwillingness of certain experts to visit detention centers and defense counsel's personal experience coordinating calls with detained clients during the pandemic).

against other statutory factors, particularly the danger Galvan poses to the community.[76]

Accordingly, Galvan's motion to revoke the court's detention order is denied. The court orders Galvan held without bond pending the trial of this action.

Signed on Galveston Island on this, the 11th day of August, 2020.

_____

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

---

[76]    *See Buswell*, 2013 WL 210899, at *5 ("the facts surrounding the underlying reasons for the defendant's detention are relevant to the [§ 3142(i)] analysis").